VAN C. ARGIRIS & CO., Plaintiff-Appellant, *v.* ANWEST BUILDING CORP., Defendant-Appellee.

First District (4th Division)    No. 79-2430

Opinion filed December 11, 1980.—Rehearing denied January 9, 1981.

Jerold Solovy, Robert L. Byman, and Don R. Sampen, all of Chicago (Jenner & Block, of counsel), for appellant.

John L. Rogers, III, of Hopkins, Sutter, Mulroy, Davis & Cromartie, of Chicago, for appellee.

Mr. PRESIDING JUSTICE LINN delivered the opinion of the court:

Plaintiff, Van C. Argiris & Co. (Argiris), appeals from an order entered in the circuit court of Cook County granting summary judgment for defendant, Anwest Building Corp. (Anwest), on counts II and III of Argiris' three-count complaint. Count II sought to recover commissions allegedly owed Argiris by Anwest resulting from Argiris' position as a third-party beneficiary under a contract entered into between Anwest and Easterling Company (Easterling). Count III sought to recover the same commissions on a theory of unjust enrichment.

We affirm.

Argiris is a licensed real estate broker. Anwest is the owner of improved property located in Carol Stream, Illinois. In January 1962 the property had one building on it. At that time, Anwest leased the entire property with the building to Easterling for a term of 20 years for an annual rental of approximately $40,000. Easterling was given the option to renew the lease for two successive five-year periods. Easterling also had the option to purchase the property during the sixth, seventh, and eighth years of the lease term, which option expired long before the events of this case occurred. Additionally, Easterling had the option to build more buildings on the property at its own expense and to occupy those buildings for the balance of the term of the lease.

In October 1973, Easterling entered into an agreement with Argiris giving Argiris the right to act as exclusive agent and broker to procure a sublessee for the property. Pursuant to this agreement, Argiris procured Motorola, Inc. (Motorola), as a sublessee ready, willing and able to enter into a sublease with Easterling. Rather than sublet the property to Motorola, Easterling informed Anwest of Motorola's interest in leasing the property and proposed that Easterling and Anwest enter into an agreement to terminate their lease so Anwest could lease the property directly to Motorola. Argiris was apparently told of this action, and it was agreed between Easterling and Argiris that Argiris would be paid any commissions due it under the terms of their exclusive listing contract.

Thereafter, Argiris was asked by Easterling to submit a statement of amounts due Argiris for its services. At the time, Easterling's lease term still had approximately eight years to run plus the two five-year options. It appears that Anwest and Motorola had tentatively agreed to a new lease

which granted possession of the property to Motorola for eight years with rent at $42,000 per year along with two five-year options to renew at that rent. In response to Easterling's request for a statement of amounts due, Argiris, on January 2, 1974, sent a letter to a representative of Easterling explaining why a statement could not be prepared at that time and indicating the approximate amount that would be due when a statement could be prepared. In pertinent part, the letter read:

> "A Statement is based on the contents of a signed lease between the lessee and the lessor. Since there is no signed lease at this point in time a final Statement cannot be sent. However, our commission as Exclusive Agent representing Easterling on their building * * * in Carol Stream is 3-1/2% of the total rental reserved in the lease. If there are options, we will be due an added commission of 3-1/2% of the total rental reserved in the option if the tenants exercise their option.
> * * *
>
> Based on telephone conversations * * *, it is our understanding that Motorola intends to pay $42,000 per year on a net basis for eight calendar years. Also, the lease contains two five year options at $42,000 per year on a net basis. Based on those figures, Easterling's responsibility to Van C. Argiris & Co. will be a commission of $11,760 on the initial eight year lease plus $7,350 per option should Motorola exercise their option."

The unsigned lease the letter referred to was the lease to be entered into between Anwest and Motorola. The "options" mentioned in the first paragraph referred to options that Motorola would have under the lease it would enter into with Anwest, but there is a substantial question here as to the kind of options the letter was intended to cover.

On January 21, 1974, Anwest and Easterling entered into a lease termination agreement. One of the terms of this agreement provided:

> "[Anwest] covenants and agrees to pay all broker's commissions due by [Easterling] to Van C. Argiris & Co. * * * as described in the letter of Van C. Argiris & Co. * * * dated January 2, 1974, a copy of which is attached hereto * * *."

Attached to this agreement terminating the lease was a copy of the letter set out above.

Also on January 21, 1974, Anwest entered into a new lease with Motorola. Under the terms of this lease, Motorola was granted possession of the property for eight years at rent of $42,000 per year with the option to extend the lease for two five-year periods at the same rent. Motorola was also granted the following option:

> "*Option to Purchase.* In the event that the Tenant desires to expand its plant facilities and the Landlord shall be unwilling or unable for

any reason to provide the expansion facilities sufficient for the use of the Tenant, then and in that event only, the Tenant shall have the rights at its option to either construct such plant facilities or additional buildings, structures, alterations, additions, changes, or improvements, or to purchase said premises during the term of this lease [under the terms set out in the remainder of this clause in the lease]."

Thereafter, Motorola took possession of the property and Anwest paid Argiris $11,760, Argiris' commission for the rent reserved for the eight-year period. In April 1975, Anwest and Motorola entered into an agreement under which Anwest, at its own expense, agreed to construct a second building on the property and in return Motorola agreed to amend its lease with Anwest so that Motorola would take possession of the new building, retain possession of the old building, and pay a substantial increase in rent. Anwest constructed the building, and in September 1976 Anwest and Motorola entered into an agreement entitled "Amendment to Lease." Under this amendment, Motorola agreed to extend the term of the original lease three years and 11 months beyond the original eight-year term and pay $42,000 per year in rent pursuant to the terms of the lease. Motorola also agreed to take possession of the new building for the same period of time and pay approximately $200,000 per year in additional rent for the use of this second building.

Upon learning of these events, Argiris demanded an additional commission from Anwest based on the total amount of rent charged to Motorola. Anwest refused and Argiris brought this action. In count I of the complaint Argiris demanded $5,758 as commissions due based on the 3-year 11-month extension of the lease at the original rental of $42,000. Anwest has paid this amount, and count I is not a part of this appeal.

In count II of the complaint, Argiris sought commissions allegedly due on the additional $200,000 per year in rent charged to Motorola in connection with the second building, contending that under the lease termination agreement entered into between Anwest and Easterling, Anwest had agreed to pay a commission on this amount to Argiris.

In count III of the complaint, Argiris contended that it was due a commission on the $200,000 per year in rent because of custom and practice in the real estate brokerage business. Argiris contended that when a broker acquires a lessee to lease property from the lessor, and a lease agreement is entered into containing an option to lease additional space, and thereafter the lessor and lessee enter into a new agreement to lease additional space for additional rent, the broker is customarily entitled to a commission based on the additional rent. In support of this contention, Argiris cited a clause from a publication put out by the Chicago Real Estate Board which allegedly stated that the broker was

entitled to an additional commission in such cases. Argiris contended that the court should recognize this custom and usage as controlling the relationship of the parties and Anwest should pay the commission because otherwise Anwest would be unjustly enriched.

Thereafter, Anwest moved for summary judgment on counts II and III of the complaint. The motion was granted, and this appeal followed.

OPINION

I

We first consider the order of summary judgment entered in favor of Anwest on count II of the complaint. In that count Argiris contended it was due a 3½ percent commission on the additional $200,000 in rent charged by Anwest to Motorola for use of the second building constructed on the property by Anwest. Argiris claimed this commission as a third-party beneficiary of the lease termination agreement entered into between Anwest and Easterling. Argiris argues that under that agreement Anwest promised Easterling to pay any commissions owed by Easterling to Argiris. Anwest does not dispute this argument. Argiris also argues, and it is not disputed, that the lease termination agreement specifically adopted the letter sent by Argiris to Easterling as part of the agreement, and it was agreed that the letter would be used to determine the commissions due Argiris by Easterling.

What is disputed is the interpretation to be given to the language of the letter and the interpretation to be given to the language of the "Option to Purchase" clause contained in Anwest's lease agreement with Motorola. Argiris contends that the "Option to Purchase" clause contained in the lease entered into between Anwest and Motorola should be interpreted to mean that Motorola had the option to rent the second building constructed by Anwest. Argiris next contends that the letter, where it refers to Argiris' being entitled to a 3½ percent commission on the total rental reserved in an option if Motorola exercises that option, should be interpreted to include the option exercised by Motorola to rent the second building. Thus, concludes Argiris, it is entitled to a 3½ percent commission on the $200,000 annual rent charged by Anwest to Motorola for use of the second building.

In the alternative, Argiris contends that the language of both the letter and the "Option to Purchase" clause is ambiguous, that one reasonable interpretation of that language is the interpretation contended by Argiris, and the actual meaning of the language can only be determined by extrinsic evidence of the parties' intent, which evidence will have to be presented at trial. Because of this, Argiris concludes that summary judgment was improper because there exists a genuine issue of material fact.

Anwest contends that the language of both the letter and the "Option to Purchase" clause is not ambiguous. It argues that the "Option to Purchase" clause was nothing but an option to purchase. When Anwest and Motorola entered into the "Amendment to Lease" agreement allowing Motorola to lease the second building, this agreement did not act as the exercise of any "option" contained in their lease but was actually a separate and newly negotiated lease allowing Motorola to rent the second building. Anwest concludes that since Motorola has not exercised an option, the agreement to rent the second building cannot be considered as an exercise by Motorola of an "option" as that word is used in the letter.

Anwest also contends that even assuming Motorola exercised an option, it was not an option covered by the letter. Anwest points to language in the letter which refers to the two options to renew the lease for the two consecutive five-year periods at rent of $42,000 per year and contends that these were the only options the letter was actually intended to include and the only options Anwest agreed to pay a commission on if Motorola exercised those options. Anwest concludes that, as a matter of law, it was entitled to summary judgment on count II of the complaint.

A motion for summary judgment shall be granted only if the pleadings, depositions, admissions, and affidavits on file show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1979, ch. 110, par. 57; *Hedrick v. Goodwin Brothers, Inc.* (1975), 26 Ill. App. 3d 327, 325 N.E.2d 73.) To determine whether a genuine issue of material fact exists, a court must consider the evidence presented in a light most favorable to the non-moving party and accept as true all reasonable inferences favoring that party. See *Joiner v. Benton Community Bank* (1979), 76 Ill. App. 3d 871, 395 N.E.2d 691; *Littrel v. Coats Co.* (1978), 62 Ill. App. 3d 516, 379 N.E.2d 293.

The parties on appeal have extensively briefed the underlying issues of whether the language in the letter and the "Option to Purchase" clause is ambiguous and whether extrinsic evidence is needed to resolve the ambiguity. Additionally, the parties have extensively briefed the underlying issue of whether, because Argiris is asserting rights as a third-party beneficiary, the ambiguities should be resolved by interpreting the language strictly against Anwest, the draftsman of the contracts, or strictly against Argiris, the third-party beneficiary. However, we need not concern ourselves with these underlying issues, for even assuming the "Option to Purchase" clause gave Motorola the option to rent the second building and even assuming the language of the letter is ambiguous and could refer to options other than the two five-year extension options, we believe that the interpretation Argiris would have us give to the language of the letter is unreasonable.

Argiris was hired by Easterling to obtain a sublessee. Argiris was never retained by Anwest and never represented Anwest during any of its negotiations with Motorola. Argiris performed its agreement with Easterling by obtaining Motorola as a sublessee ready, willing, and able to enter into a sublease. A sublease was never entered into because Easterling's lease was terminated and Anwest and Motorola entered into a new lease. However, Easterling agreed with Argiris to pay any commissions due for Argiris' services. Anwest then agreed in the lease termination agreement with Easterling to pay Argiris any commissions due from Easterling and to base those commissions on the letter sent by Argiris to Easterling.

The key to this case is that Anwest agreed to pay only those commissions that Easterling was required to pay. Anwest did not intend to pay any other commissions. Let us assume for the moment that instead of the events that occurred in this case Easterling and Motorola had actually entered into a sublease. Let us also assume that in this sublease Easterling granted to Motorola every possible right it had in the property and granted to Motorola every possible option Easterling could have exercised in relation to the property. Additionally, let us assume, simply for the purposes of argument, that such a transfer of rights would still be a sublease rather than an assignment. Now, assuming these facts, could Easterling in that sublease have granted to Motorola the option to rent a second building that would be constructed by Anwest at Anwest's expense?

The answer, of course, is no. Easterling had no agreement with Anwest which said that Anwest should build a second building on the property at Anwest's expense and rent it to Easterling. Anwest had no such obligation under its lease with Easterling and Easterling could grant no such option to Motorola. Thus, if a sublease had been entered into between Easterling and Motorola, Easterling would not have owed Argiris a commission for the exercise by Motorola of the option to rent the second building constructed by Anwest at Anwest's expense because such an option could not possibly have been included in the sublease.

As already noted, Argiris was the broker for Easterling, not Anwest. When Argiris and Easterling entered into their exclusive listing agreement, the highest possible commission that Argiris could have expected to receive for its services was a commission on all rents that Easterling could have charged Motorola in a sublease and on all the additional rents that Easterling could have charged Motorola if Motorola exercised an option that Easterling had granted to Motorola in a sublease. This, of course, assumes that the Easterling and Argiris agreement covered all possible options that could have been exercised by Motorola as a result of a sublease agreement. Argiris could not possibly have expected a commission on rents that Easterling could not have charged Motorola or on rents

resulting from the exercise of an option by Motorola which option Easterling had no power to grant to Motorola.

■■ We now return to the facts in this case. Though Argiris, when it became Easterling's broker, could not possibly have expected to receive a commission from Easterling for the option exercised here, because it now finds itself in the opportune position of a third-party beneficiary to a contract containing ambiguous language, it contends that it should be paid such a commission. To interpret the language of the letter as Argiris contends it should be interpreted would be to say that Anwest intended under its lease termination agreement with Easterling to give Argiris an unexpected windfall. Such an interpretation is unreasonable. Even if the language of the letter is ambiguous, the most favorable interpretation to Argiris that could be given to the language is that it would be due a commission for rents reserved in any option exercised by Motorola which option could have been granted to Motorola by Easterling. Since Easterling could not have granted to Motorola the option exercised by Motorola, Argiris cannot be entitled to a commission based on the exercise of that option.

Therefore, we necessarily hold that Anwest was entitled to summary judgment on count II of the complaint as a matter of law.

## II

■■ We consider now the summary judgment entered in favor of Anwest as to count III of the complaint. Though the allegations of count III are based on a rather unique contention of unjust enrichment based on custom and usage in the trade, we need not concern ourselves with the question of whether such a cause of action exists under any set of circumstances. In the present case, Anwest's only duties to Argiris arose from Anwest's lease termination agreement with Easterling. The record discloses that Argiris and Anwest never entered into a contract between themselves. Any obligation owed to Argiris by Anwest must arise as a result of Argiris' being a third-party beneficiary to Anwest's agreement with Easterling. Since we have already held that Anwest owes no further commissions to Argiris under that agreement, it is not possible for Anwest to owe further commissions under any other theory.

Accordingly, for the reasons noted, we affirm the trial court's order granting summary judgment for Anwest on counts II and III of plaintiff's complaint.

Affirmed.

JOHNSON and ROMITI, JJ., concur.